## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CC-00605-COA

**KHLOE CONNER**                                                                         **APPELLANT**

**v.**

**MISSISSIPPI DEPARTMENT OF**                                              **APPELLEE**
**EMPLOYMENT SECURITY**

DATE OF JUDGMENT:                    04/24/2017
TRIAL JUDGE:                               HON. DAL WILLIAMSON
COURT FROM WHICH APPEALED:    JONES COUNTY CIRCUIT COURT,
                                                    SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:          KHLOE CONNER (PRO SE)
ATTORNEY FOR APPELLEE:            ALBERT B. WHITE
NATURE OF THE CASE:                 CIVIL - STATE BOARDS AND AGENCIES
DISPOSITION:                            AFFIRMED - 05/15/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., GREENLEE AND WESTBROOKS, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     The Mississippi Department of Employment Security's Board of Review (Board)

affirmed the denial of unemployment benefits following Khloe Conner's termination from

Dollar General. Conner appealed to the Circuit Court of the Second Judicial District of Jones

County, which affirmed the Board's decision. Finding no error, we affirm the circuit court's

judgment.

### FACTS AND PROCEDURAL HISTORY

¶2.     On May 15, 2015, Conner began working at Dollar General as a lead sales associate.

On September 30, 2016, Conner was terminated, in accordance with the company's

workplace-violence policy, because she engaged in a physical altercation with a customer, during which she cut the customer with a box-cutter.

¶3.     After her termination, Conner sought unemployment benefits, and a claims examiner investigated the reasons for her termination. Ultimately, the claims examiner denied Conner unemployment benefits finding that Conner was discharged from work for misconduct connected with her employment and was therefore disqualified from receiving benefits. Conner appealed the denial of her claim to an administrative-law judge (ALJ), who conducted a telephonic hearing.

¶4.     During the hearing on Conner's appeal, Curtis Swires, the Dollar General store manager, testified that Conner was discharged from her job as a lead sales associate because she violated Dollar General's workplace-violence policy. He testified that Conner was aware of this policy and explained the policy indicated that Dollar General would not ignore, condone, or tolerate any disruptive, threatening, or violent behavior by any Dollar General employee, and such behavior could lead to termination.

¶5.     Swires testified that on the day of the incident, Conner and a customer got into a verbal altercation after the customer asked for one of her items to be bagged. Following the verbal altercation, Swires testified that the customer told Conner she would be waiting on her outside and that Conner replied, "You don't have to. I'm on break. I will be right outside." Swires testified that he ordered Conner not to immediately go outside but wait five minutes for the customer to leave. However, Swires claimed that she ignored his order, and she waited only a minute and a half before going outside. Swires testified that about thirty

2

seconds after Conner went outside he heard a "commotion" and went outside to investigate. Once outside, Swires claimed he witnessed Conner swinging at the customer and observed the customer bleeding from several areas of her body. The customer advised Swires that Conner had cut her with a box-cutter.

¶6.     Next, Conner testified on her own behalf. She admitted that she had a verbal altercation with a customer, but denied that Swires told her to wait five minutes before going outside. She also testified that she went outside not knowing the customer was waiting on her and was attacked. She testified that she acted in self-defense and felt there was no other alternative to escape, so she picked up a box-cutter that was in her possession and cut the customer several times.

¶7.     After concluding the hearing, the ALJ affirmed the claims examiner's denial of benefits, finding that Conner's conduct violated Dollar General's workplace-violence policy and rose to the level of misconduct. Conner, still aggrieved, sought review from the Board, which after careful consideration of the record affirmed the ALJ's decision.

¶8.     On February 2, 2017, Conner appealed to the Circuit Court of the Second Judicial District of Jones County. On April 24, 2017, the circuit court affirmed the Board's decision, finding that the decision was supported by substantial evidence. Conner appeals.

**STANDARD OF REVIEW**

¶9.     "This Court's scope of review in an unemployment compensation case is limited." *Welch v. Miss. Emp't Sec. Comm'n*, 904 So. 2d 1200, 1201 (¶5) (Miss. Ct. App. 2004). In reviewing a decision of the Mississippi Department of Employment Security (MDES), "[t]he

findings as to the facts of the Board of Review are conclusive if supported by substantial evidence and absent fraud." *Id.* Further, the supreme court has explained that "where there is the required substantial evidence, this Court has no authority to reverse the circuit court's affirmance of the decision of the Board of Review." *Broome v. Miss. Emp't Sec. Comm'n*, 921 So. 2d 334, 337 (¶12) (Miss. 2006). Thus, the denial of unemployment benefits will be disturbed on appeal only if the agency's decision (1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope of power granted to the agency, or (4) violates the claimant's constitutional rights. *Johnson v. Miss. Emp't Sec. Comm'n*, 761 So. 2d 861, 863 (¶6) (Miss. 2000).

## DISCUSSION

¶10.    On appeal, Conner contends that she was entitled to unemployment benefits because her actions were not "misconduct," and, therefore, she is not an excluded person under Mississippi Code Annotated section 71-5-513 (Supp. 2017). She asserts that the altercation happened while she "was not on the clock" and was not in the course of employment so, as a matter of law, the altercation cannot be misconduct in connection with her work. Further, she asserts that her actions were in self-defense and cannot be misconduct.

¶11.    It is well settled that in employment-misconduct cases, "the employer bears the burden to prove by substantial, clear, and convincing evidence that a former employee's conduct warrants disqualification of benefits." *Windham v. Miss. Dep't of Emp't Sec.*, 207 So. 3d 1249, 1252 (¶10) (Miss. Ct. App. 2017) (quoting *Over the Rainbow Daycare v. Miss. Dep't of Emp't Sec.*, 188 So. 3d 1249, 1251 (¶7) (Miss. Ct. App. 2016)). The supreme court has

4

defined disqualifying "misconduct" as:

> [C]onduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer . . . [comes] within the term.

*Wheeler v. Arriola*, 408 So. 2d 1381, 1383 (Miss. 1982). However, an employee's conduct "may be harmful to the employer's interests and justify the employee's discharge; nevertheless, it evokes the disqualification for unemployment insurance benefits only if it is wilful, wanton or equally culpable." *Acy v. Miss. Emp't Sec. Comm'n*, 960 So. 2d 592, 595 (¶14) (Miss. Ct. App. 2007).

¶12. Fighting has been found to be grounds for disqualification of benefits. *Welch*, 904 So. 2d at 1202-03 (¶13). In *Welch*, this Court affirmed the Board's denial of unemployment benefits to a claimant who engaged in a physical altercation with another employee. The employee in *Welch* admitted that a fight had occurred and that he had thrown the first punch. *Id.* at 1202 (¶7). Further, Welch admitted that he received an employee handbook and knew that he could lose his job for fighting. *Id.* In affirming the Board's decision, we found that the "evidence show[ed] that Welch's physical altercation with another employee violated the terms of the employee handbook." *Id* at (¶12). Additionally, this Court specifically found that Welch's action constituted misconduct and therefore upheld the denial of unemployment benefits. *Id.* at 1202-03 (¶13).

¶13. Similarly, in the present case the evidence shows that Conner had received an

employee handbook, which contained her employer's workplace-violence policy. While Conner testified that she did not read this handbook, she admitted that it was a reasonable policy for employees not to engage in "disruptive, threatening, or violent behavior." Further, Conner admitted that she cut the customer with a box-cutter, but asserts that it was in self-defense. While Conner does have a right to defend herself, her employer also has an interest in providing a safe store for customers and other workers. Conner's deliberate action of leaving the store and going into the parking lot was not only in direct contravention of her manager's order but evinced "such willful and wanton disregard of the employer's interest . . . [and] standards of behavior which the employer has the right to expect from his employee." *Wheeler*, 408 So. 2d at 1383. Accordingly, we find the Board's denial of unemployment benefits was supported by substantial evidence. Furthermore, we specifically find that Conner's action constituted "misconduct" and disqualified her from receiving unemployment benefits. Thus, we affirm the circuit court's decision.

## CONCLUSION

¶14.   We agree with the circuit court's decision that substantial evidence was presented to support Conner's denial of unemployment benefits. Conner's deliberate action of going outside to the parking lot and engaging in a physical altercation with a customer was against the employer's workplace-violence policy. Further, Conner acted in such willful and wanton disregard for her employer's interests that disqualification of benefits is warranted. We therefore affirm the circuit court's decision affirming the denial of unemployment benefits.

¶15.   **AFFIRMED.**

6

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, WESTBROOKS AND TINDELL, JJ., CONCUR.**