# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CC-01734-COA

**SHIRLEY JONES**                                                 **APPELLANT**

**v.**

**MISSISSIPPI DEPARTMENT OF**                          **APPELLEE**
**EMPLOYMENT SECURITY**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/10/2019 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER JR. |
| COURT FROM WHICH APPEALED: | CHOCTAW COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | SHIRLEY JONES (PRO SE) |
| ATTORNEY FOR APPELLEE: | ALBERT B. WHITE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 05/18/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., GREENLEE AND WESTBROOKS, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1. The Mississippi Department of Employment Security's Board of Review (the Board) affirmed the denial of unemployment benefits following Shirley Jones' termination from Donelson Enterprises. Jones appealed to the Circuit Court of Choctaw County, which affirmed the Board's decision. Finding no error, we affirm the circuit court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶2. In July 2016, Shirley Jones began working in a janitorial capacity with Donelson Enterprises. On April 12, 2019, Donelson Enterprises terminated Jones' employment, and she later filed for unemployment benefits. A claims examiner determined that Jones was terminated for committing misconduct connected with her employment and subsequently

denied her unemployment benefits. Jones appealed the denial of her claim, and an administrative law judge (ALJ) conducted a telephonic hearing on June 13, 2019.

¶3. During the hearing, both Jones and her former employer, Lela Hubbard, testified regarding the events leading to Jones' termination. Hubbard testified that Jones was discharged from Donelson Enterprises' employment for failing to perform her duties to the employer's expectation. Hubbard explained that she had received complaints from her company's only client, Renasant Bank, concerning the cleaning of the bank. Hubbard spoke with Jones about the bank manager's complaints regarding the quality of cleaning when Jones' daughter, Monica Jones, covered for her mother. Monica was not an employee of Donelson Enterprises.

¶4. The company's handbook listed policies and rules, which stated that Jones could be discharged because of work performance and cleaning concerns. According to Hubbard, the handbook also delineated disciplinary action for complaints, including that employees could be given a verbal warning, a suspension, or a supervisor may accompany the employee to help with cleaning services.

¶5. On February 1, 2018, Jones received her first warning concerning how the bank had been dusted. Jones received her second warning on August 23, 2018, after Hubbard received pictures from the bank's manager displaying stains on the toilet seats and excretions in the toilet. On November 12, 2018, Jones received a third warning. At the time of the warning, Hubbard instructed Jones not to allow Monica to clean the bank. However, on February 12, 2019, Hubbard became aware that Jones was still allowing Monica to clean the bank when

2

she received a call from Monica asking about the vacuuming and mopping schedules. Shortly after Monica's call to Hubbard, Hubbard received a call from the bank's manager asking about the same cleaning schedule. The bank manager inquired into the employee status of Monica and Jones. The manager expressed concern that Monica was present at the bank when she was not a Donelson Enterprises employee.

¶6. Subsequently, on March 19, 2019, Donelson Enterprises received a letter from Renasant Bank terminating its janitorial contract due to the continued sub-par cleaning. Since Renasant Bank was Hubbard's only client, Jones was released from her employment on April 12, 2019. Hubbard testified that she did not have any other businesses where she could place Jones, which was the reason for terminating her employment.

¶7. At the hearing, Jones conceded that Hubbard instructed her not to allow her daughter to clean the bank in Jones' absence. While Jones admitted that she allowed her daughter to continue to clean the bank, she testified that Hubbard later gave her permission to let her daughter resume helping.

¶8. Based on these facts, the ALJ affirmed the claims examiner's decision and upheld Jones' denial of unemployment benefits. Specifically, the ALJ found that Hubbard instructed Jones not to allow her daughter to clean the bank since her daughter's work caused tension between the company and its client. The ALJ found that Jones defied her employer's instruction resulting in the company losing its only client. The ALJ determined that Jones' actions constituted misconduct, and she was therefore ineligible to receive unemployment benefits.

¶9. Jones appealed the ALJ's decision to the Board, which upheld the decision and adopted the ALJ's findings. She then appealed to the circuit court, which upheld the Board's decision. Now, Jones appeals.

**STANDARD OF REVIEW**

¶10. "This Court's scope of review in an unemployment compensation case is limited." *Welch v. Miss. Emp't Sec. Comm'n*, 904 So. 2d 1200, 1201 (¶5) (Miss. Ct. App. 2004). When reviewing a decision by the Mississippi Department of Employment Security (MDES), "[t]he findings as to the facts of the Board of Review are conclusive if supported by substantial evidence and absent fraud." *Id*. Furthermore, our supreme court has stated that "where there is the required substantial evidence, this Court has no authority to reverse the circuit court's affirmance of the decision of the Board of Review." *Broome v. Miss. Emp't Sec. Comm'n*, 921 So. 2d 334, 337 (¶12) (Miss. 2006). Therefore, this Court will not disturb the denial of unemployment benefits unless the decision is "(1) unsupported by substantial evidence, (2) arbitrary or capricious, (3) beyond the scope of power granted to the agency, or (4) in violation of the employee's constitutional rights." *Johnson v. Miss. Emp't Sec. Comm'n*, 761 So. 2d 861, 863 (¶6) (Miss. 2000).

**DISCUSSION**

**I. Whether the circuit court erred by affirming the Board's decision.**

¶11. "[A] reviewing court may not substitute its judgment for that of the administrative agency, or reweigh the evidence." *Ross v. State*, 286 So. 3d 673, 676 (¶5) (Miss. Ct. App. 2019) (quoting *Pub. Emps.' Ret. Sys. v. Dishmon*, 797 So. 2d 888, 892 (¶12) (Miss. 2001)).

Therefore, the question for review here is whether there is substantial evidence to support the agency's finding that Donelson Enterprises met its burden of showing by substantial evidence that Jones committed disqualifying misconduct.

¶12.    Under Mississippi Code Annotated section 71-5-513(A)(1)(b) (Rev. 2011), an individual shall be disqualified from receiving unemployment benefits if "[s]he was discharged for misconduct connected with [her] work . . . ." Disqualifying "misconduct" is defined as:

> [C]onduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer . . . [comes] within the term.

*Wheeler v. Arriola*, 408 So. 2d 1381, 1383 (Miss. 1982).  In employment-misconduct cases, the burden is placed on the employer to prove that a former employee's conduct warrants disqualification of benefits by substantial, clear, and convincing evidence.  *Conner v. Miss. Dep't of Emp't Sec.*, 247 So. 3d 341, 344 (¶11) (Miss. Ct. App. 2018) (citing *Windham v. Miss. Dep't of Emp't Sec.*, 207 So. 3d 1249, 1252 (¶10) (Miss. Ct. App. 2017)).  To obtain unemployment benefits, an individual "must be unemployed through no fault of [her] own." *Columbus Light & Water Dep't v. Miss. Dep't of Emp't. Sec.*, 281 So. 3d 920, 924 (¶12) (Miss. Ct. App. 2019).

¶13.    Furthermore, MDES regulation 308.00 provides that work misconduct shall be defined but not limited to the following:

1. The failure to obey orders, rules or instructions, or failure to discharge the duties for which an individual was employed;

    a. An individual shall be found guilty of employee misconduct for the violation of an employer rule only under the following conditions:

        i. The employee knew or should have known the rule;

        ii. The rule was lawful and reasonably related to the job environment and performance; and

        iii. The rule is fairly and consistently enforced.

2. A substantial disregard of the employer's interests or of the employee's duties and obligations to the employer;

3. Conduct which shows intentional disregard – or if not intentional disregard, utter indifference – of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of the employee; or

4. Carelessness or negligence of such degree or recurrence as to demonstrate wrongful intent.

20 Miss. Admin. Code Pt. 101, Ch. 300, R. 308.00(A) (2012).

¶14. Jones contends she was not fired and denies any misconduct, and therefore her unemployment benefits should not have been denied. However, we disagree. During the hearing, Hubbard and Jones testified that on November 11, 2018, Hubbard instructed Jones that Jones' daughter was no longer allowed to clean the bank in Jones' absence. However, Jones admitted that she continued to allow her daughter to clean the bank after those instructions were given.

¶15. Here, the record reflects that there was substantial evidence to support Jones' termination for misconduct. Her employer gave Jones instructions not to allow her daughter

to clean the bank. Donelson Enterprises expected Jones to comply with its instructions, but she did not, causing the company to lose its only customer. Based on these facts, we see no reason to disturb the Board's decision to deny unemployment benefits.

## II. Whether Jones is liable for repaying unemployment benefits.

¶16. The claims examiner determined that Jones was terminated for committing misconduct connected with her employment and subsequently denied her unemployment benefits. The claims examiner also required Jones to repay the $470 in benefits she received. The ALJ affirmed the claims examiner's decision. Jones appealed to the Board, which upheld the ALJ's decision. She then appealed to the circuit court, which also affirmed the denial and repayment of unemployment benefits.

¶17. Repayment of benefits is prescribed by law. A person who is later deemed ineligible for benefits must repay any unemployment benefits received. Miss. Code Ann. § 71-5-19(4)(b) (Supp. 2013).

¶18. In its brief, MDES argues that since Jones was subsequently disqualified from receiving benefits, Jones must repay the $470 paid to her for the two weeks ending on May 11 and 18, 2019. However, Jones did not challenge the order requiring her to repay unemployment benefits. Therefore, we affirm the order requiring Jones to repay the unemployment benefits she received.

## CONCLUSION

¶19. For the above reasons, we find that the circuit court's judgment was proper. Therefore, we affirm.

¶20. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**